USDC SCAN INDEX SHEET

















JRM   9/24/99   12:15

3:99-CV-00241   CROWE V. COUNTY OF SAN DIEGO

*91*

*P/A.*

1 | HUGH G. RADIGAN     SBN 94251
KOESTER AND WALKER
2 | 500 N. Brand Blvd., Suite 2200
Glendale, CA 91203
3 | Tel.: (818) 545-3700
Fax: (818) 545-3702
4 |



5 | Attorneys for Defendant,
NATIONAL INSTITUTE FOR TRUTH VERIFICATION
6 |

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10 |

11 | STEPHEN CROWE; CHERYL CROWE;      **CASE NO. 99cv0241-R(RBB)**
JUDITH ANN KENNEDY, MICHAEL        ~~99cv0263-H(JFS)~~
12 | CROWE and SHANNON CROWE, a minor  ~~99cv0283BTM(LAB)~~
through their guardian ad litem, STEPHEN
13 | CROWE                              **MEMORANDUM OF POINTS AND**
                                   **AUTHORITIES IN SUPPORT OF**
14 |            Plaintiffs,           **MOTION TO DISMISS COMPLAINT**
15 |      vs.                          **DATE:**      November 8, 1999
                                   **TIME:**      2:00 p.m.
16 | CITY OF ESCONDIDO; CITY OF        **COURTROOM:** 5
OCEANSIDE; COUNTY OF SAN DIEGO;
17 | RALPH CLAYTOR; CHRIS McDONOUGH;
GARY HOOVER; LAWRENCE BLUM;
18 | BARRY SWEENEY; JAMES LANAGAN;
SERGEANT ANDERSON; RICK BASS;
19 | NATIONAL INSITITUTE FOR TRUTH
VERIFICATION, a business entity; and DOES
20 | 1 through 100, inclusive,
21 |            Defendants.

22 | **INTRODUCTION AND STATEMENT OF FACTS**

23 |        The gravamen of plaintiff's charging allegations within his complaint assert grievances

24 | sounding in Civil Rights violations, defamation, and false arrest occurring during what plaintiff's

25 | describe as a highly suspect and questionable police investigation of a murder.  In short, plaintiff

26 | alleges he was wrongfully implicated, improperly interrogated, wrongly accused and ultimately

27 | arrested for a crime he had not been involved with perpetrating.  Almost as if an afterthought,

28 | plaintiff appends a novel theory of product liability as to the defendant, **NATIONAL**



1  **INSTITUTE FOR TRUTH VERIFICATION**, (hereinafter " NITV") asserting that defendant's
2  product, the computer voice stress analyzer, (hereinafter "**CVSA**") was either defectively
3  manufactured or improperly utilized within plaintiff's interrogation process to his detriment.

4      The conclusory nature of the cursory charging allegations directed to **NITV** are glaringly
5  apparent.  Unfortunately, plaintiff references the **CVSA** equipment only once within his charging
6  allegations (paragraph 65) wherein he asserts an investigating officer told plaintiff the machine
7  was 99 percent accurate and that he could not expect to fool the box.  According to this charging
8  allegation, the officers remarks were false and intended to frighten plaintiff into confessing.  Even
9  liberally construing these same charging allegations, at best what we have is a negligent
10 misrepresentation and most assuredly not a product liability defect.

11     Beyond this, defendant is left totally to surmise as to what, if anything, defendant's
12 product did to contribute to plaintiff's predicament.  The bald conclusory allegations of a defective
13 product without more are totally inadequate to satisfy the specificity required to allow this
14 defendant to understand its role and contribution to plaintiff's alleged damages.  What is even
15 more troubling is the fact that plaintiff's theory of recovery sounding in products liability within
16 this criminal investigation scenario is most despaired in light of the immunities and protections
17 afforded to defendant by virtue of <u>California Civil Code</u> Section 47(b).

18     It does not suffice to assert that a product, when properly utilized by trained operators,
19 results in a finding contrary to plaintiff's best interest, that it is defective, inaccurate or inherently
20 flawed.  Pursuant to <u>California Penal Code</u> Section 637.3 plaintiff implicitly consented to the
21 testing performed by trained operators.  Results of the test interpreted by trained operators, failed
22 to exonerate him.  Such charging allegations are wholly insufficient as a matter of law upon which
23 to base a theory of product liability.

24     **PROCEDURAL DEFECTS WITH THE AMENDED COMPLAINT.**

25     Prior to **NITV's** joinder within these related actions, this court entered a Minute Order
26 dated March 10, 1999, which set forth the controlling schedule with respect to amending the
27 original three related complaints.  That order clearly instructed plaintiff to amend his Complaint
28 and effectuate service upon defendant no later than March 22, 1999.  (See attached hereto as

2

1    Exhibit A is a true and correct copy of this same Minute Order.)

2          Defendant has reviewed the Silverman Declaration executed September 1, 1999 at

3    paragraph 3 submitted herein to excuse his behavior when confronted by Oceanside's Sanction

4    Motion. That declaration states in pertinent part at paragraph 3:

5               "I have a vivid recollection of the events:  at the pretrial conference, Magistrate

6               Brooks asked me if I wanted to amend my 1983 action or if I would stand on the

7               complaint as it was. The other defendants said they wanted to amend, and I said I

8               didn't need to amend because I had not filed any state law claims and that before I

9               did, I was going to ask the court for relief from the governmental claims statutes."

10         No doubt plaintiff's counsel perceived his cleverly worded declaration created a new

11   schedule within which to amend his complaint and effectuate service. Unfortunately, his timetable

12   was known only to himself. Plaintiff's amended effort failed to even include defendant **NITV**

13   within either the caption or the introductory charging allegations identifying the parties being

14   sued. Regardless of whether this was done with tactical purpose or through clerical oversight, it

15   effectively masked the existence of his true intent to bring in new parties within peculiar theories

16   of recovery and untimely fashion.

17         Not only is this conduct an express violation of the minute order of March 10, 1999, but

18   the omissions within the Amended Complaint render it fatally flawed and vulnerable to a motion

19   to strike. (See Federal Rule of Civil Procedure 10(a); see, also, Seeney v. Kavitski, No. 94-1649,

20   1995 W.L. 314735 at *2, N.3 (E.D. PA 1995) *wherein the court noted the person is not a*

21   *defendant in the case where the person's name does not appear in the caption.*

22         **THE CHARGING ALLEGATIONS DIRECTED TO NITV LACK**

23         **SPECIFICITY SUFFICIENT UPON WHICH TO BASE ANY CLAIM FOR**

24         **PRODUCTS LIABILITY.**

25         Plaintiff's complaint asserts two causes of action against **NITV**, one sounding in

26   negligence with respect to the design, manufacture and marketing of its product, and the other

27   sounding in strict liability for the products failure to properly perform.  Neither theory has any

28   vitality as to the product involved.

3

1    CVSA was introduced in the 1980's by **NITV** as an investigative tool to facilitate truth

2    finding within law enforcement operations.  Its effectiveness requires that **NITV** restricts its sale

3    to law enforcement agencies.  **CVSA** accurately identifies deception or validates statements

4    quickly and effectively.

5    The **CVSA** detects, measures, quantifies and displays micro-tremors.  These tremors are

6    tiny frequency modulations in the human voice.  When a test subject is not being truthful, the

7    automatic, or involuntary nervous system, causes an inaudible increase in the micro-tremors

8    frequency.

9    A state of the art computer processes these voice frequencies and graphically displays the

10    fluctuation of the voice patterns simultaneously with the subject's answers with up to 15 patterns

11    on the computer screen at one time, numerically scoring each pattern and checking for deception.

12    As such, the **CVSA** is not restricted to Yes and No answers and is able to analyze accurately tape

13    recordings of unstructured conversations.

14    As the subject speaks, the computer displays each voice pattern, numbers it and displays

15    its numerical value on the computer screen.  At the end of the examination, the computer renders

16    an evaluation utilizing a patented algorithm system to render a finding of either deception

17    indicated or no deception indicated on each response to each question.  Based upon these

18    findings, a trained examiner may either decide to eliminate the subject as a suspect or begin a

19    formal interrogation.  Unlike a polygraph, the **CVSA** does not require that the subject being

20    tested have any wires attached to him.  Unlike the polygraph, drugs do not affect the results of the

21    exam and there are no known counter measures that will cause "inconclusive" results.

22    It is graphically apparent that the **CVSA** is an adjunct to a competent and thorough police

23    investigation.  In the case at bar there are no allegations that the devices utilization was the sole or

24    compelling determinative factor utilized by the investigating officers in reaching their decision to

25    detain, interrogate, arrest and ultimately charge plaintiff.  To suggest otherwise is to ignore the

26    surplusage of physical and circumstantial evidence, incriminating statements and admissions

27    secured by law enforcement within the totality of their investigation.

28

4

1    As such, the utilization of the **CVSA** is analogous to an eye witness to a crime who comes

2  forward and testifies as to their perceptions.   It is not an imprimatur of guilt or innocence, nor

3  does it presume to replace the role of the ultimate fact finder at trial.   It is simply a tool to aid in

4  truth determination.   As a product, it performed as intended.   Implicitly, either consent from

5  **CROWE's** guardian was granted or **CROWE** himself consented to the questions that were

6  directed to him and the answers he gave were properly analyzed by trained operators.   How the

7  use of the device violated the law or resulted in damages to the plaintiff is left totally to surmise.

8  As such the complaint is vulnerable to a Motion to Dismiss.   See <u>Silicon Knights, Inc. v. Crystal</u>

9  <u>Dynamics, Inc.</u>, 983 F.Supp 1303 (ND.Cal.1997).

10    Not surprisingly, eye witnesses who testify at trial are immune from civil liability.   This

11  privilege is codified at <u>California Civil Code</u> Section 47 which provides in pertinent part:

12    "A privileged publication or broadcast is one made:

13         (a) in the proper discharge of an official duty.

14         (b) In any

15              (1) legislative proceeding,

16              (2) judicial proceeding,

17              (3) in any other official proceeding authorized by law, . . . ."

18  As interpreted in a number of cases, Section 47 of the Civil Code protects persons who report

19  potential criminal activity to the police or local prosecutor from law suits even if the report is

20  made with malice.   See <u>Cote v. Henderson</u> (1990) 218 Cal.App.3d 796, 806, [ Defendant was

21  "absolutely privileged" to report rape to the police and District Attorney]; See <u>Williams v. Taylor</u>

22  (1982) 129 Cal.App.3d 745, 753, [Owner of auto shop "absolutely privileged" to tell police

23  department of former manager's wrong doing].

24    In interpreting the rationale for the privilege the court in <u>Fremont Compensation Insurance</u>

25  <u>vs. Superior Court</u> (1996) 44 Cal.App.4[th] 867, 876-877 stated:

26    "The absolute privilege in Civil Code Section 47 represents a value judgment that

27      facilitating the 'utmost freedom of communication between citizens and public authorities

28      whose  responsibility it is to investigate and remedy wrongdoing' is more important than

5

1    the 'occasional harm that might befall a defamed individual'." See <u>Imig v. Ferarr</u> (1977)

2    70 Cal.App.3d 48, 55-56.

3    In interpreting this absolute privilege, the court in <u>Williams v. Taylor</u> (1982) 129

4    Cal.App.3d 745, 753-754 noted that:

5    "Section 47 provides for an absolute privilege with regard to statements made " in

6    any . . . . official proceeding authorized by law." In our view, a communication

7    concerning possible wrongdoing made to an official government agency such as a

8    local police department and which communication is designed to prompt action by

9    that entity, is as much a part of an official proceeding as a communication made

10    after an official investigation has commenced." (Citations omitted) After all, "the

11    policy underlying the privilege is to assure utmost freedom of communication

12    between citizens and public authorities whose responsibility it is to investigate and

13    remedy wrongdoing." (Citations omitted) In order for such investigation to be

14    effective, "there must be an open channel of communication by which citizens call

15    his attention to suspected wrongdoing. That channel will quickly close if its use

16    subjected the user to risk of liability for libel. Qualified privilege is inadequate

17    under the circumstances . . . The importance of providing to citizens free and open

18    access to governmental agencies for the reporting of suspected illegal activity

19    outweighs the occasional harm that might befall a defamed individual. Thus the

20    absolute privilege is essential."

21    Perhaps an even more explicit rationale for this rule is contained within the court's finding

22    in <u>Kachig v. Booth</u> (1971) 22 Cal.App.3d 626, 641 wherein the court noted:

23    "Underlying the recognition of this privilege is the important public policy of

24    affording the utmost freedom of access to the courts. (Citations omitted). The

25    privilege is accorded not only to parties, but to witnesses, even where their

26    testimony is allegedly perjured and malicious. (Citations omitted) The resulting

27    lack of any really effective civil remedy against perjurers is simply part of the price

28    that is paid for witnesses who are free from intimidation by the possibility of civil

6

1   liability for what they say."

2   Pursuant to this well-reasoned authority, the implementation of the **CVSA** as described

3   within the charging allegations of this complaint should necessarily enjoy the same absolute

4   privilege and immunity.  To hold otherwise would inhibit the intended unfettered dissemination of

5   information to appropriate authorities when criminal wrongdoing is suspected.   Again, there are

6   no specific charging allegations within the complaint that describe with any specificity what it is

7   that was asked of the plaintiff or how he responded such that ultimate determinations of guilt or

8   innocence were rendered.  What the court is currently confronted with by these same charging

9   allegations is simply plaintiff's disgruntlement with the fact he was not exonerated after the one

10   hour test was administered to him.  Defendants are left totally in the dark as to what facet of the

11   implementation or utilization of their device has in any way further incriminated or led the trained

12   operators to conclude that plaintiff was lacking veracity.  As such, plaintiff cannot establish any

13   causal relationship between this particular device's utilization and its results and his asserted

14   damages.

15   The application of the privilege set forth in Civil Code Section 47 precludes plaintiff from

16   any tort recovery other than that sounding in malicious prosecution.  See <u>Block v. Sacramento</u>

17   <u>Clinical Labs, Inc.</u> (1982) 1131 Cal.App.3d 386, 389-390 for an excellent discussion of the

18   application and expansion of this privilege to all variety of tort remedies.   In accord, see

19   <u>Hunsucker v. Sunny Vale Hilton</u> (1994) 23 Cal.App.4th 1498, 1501-2, wherein the protections

20   afforded by Civil Code Section 47 were extended to a hotel manager who had reported to the

21   police the fact that a guest was seen brandishing a weapon in his room.  The guest was arrested

22   and briefly detained after a positive warrant check came up on their computer.  After establishing

23   his correct identity and proving to the police that the gun involved was a toy, the guest was

24   released.

25   Likewise in <u>Cedars Sinai Medical Center v. Superior Court</u> (1988) 206 Cal.App.3d 414,

26   418, the protections of Civil Code Section 47 extended to private citizen employees of a hospital

27   who were asked by police to confirm if a voice on a taped bomb threat was that of a co-worker

28   suspected of arson.  In granting a writ after the lower court denied the employee's summary

7

99cv0241E(RBB)

1   judgment motion, the court concluded:

2   "Public policy requires that private persons who aid in the enforcement of the law

3   should be given an effective protection against the prejudice which is likely to arise

4   from the termination of the prosecution in favor of the accused.".

5   The California statutory scheme envisions that the sole remedy available to someone

6   charged with criminal wrongdoing is a malicious prosecution action which only ripens after the

7   accused successfully defends on the merits the underlying criminal charge.  See Silberg v.

8   Anderson (1990) 50 Cal.3d 205, 215-216 wherein the California Supreme Court made it clear

9   that the privilege of Section 47 applies to all tort actions except malicious prosecution, that are

10   based upon communications of the proper type.

11   There being no favorable determination of the underlying criminal charges as to this

12   plaintiff on the merits that would exonerate plaintiff and indicate his innocence, such a cause of

13   action for malicious prosecution is necessarily premature.

14   By analogy, **NITV** is to be afforded the same privileges and immunities granted to an eye

15   witness facilitating a criminal investigation, nothing more, nothing less.

16   **CALIFORNIA PENAL CODE SECTION 637.3 TACITLY CONDONES**

17   **THE USAGE OF THE CVSA HEREIN.**

18   California Penal Code Section 637.3 provides in pertinent part:

19   "(a)    No person or entity in this State shall use any system which examines or

20   records in any manner voice prints or other voice stress patterns of another

21   person to determine the truth or falsity of statements made by such other

22   person without his or her express written consent given in advance of the

23   examination or recordation.

24   (b)    This section shall not apply to any peace officer, as defined in Section 830,

25   while he is carrying out his official duties. . . ."

26   In the case at bar, Officer McDonough, a certified operator of the equipment and acting

27   within the course and scope of his employment as a police officer for the City of Oceanside,  is to

28   be presumed to have properly secured either **CROWE's** consent or that of his guardians to utilize

8

1 | the device as part of the interrogation process.

2 |      As is clearly evident from the above-referred code section , the utilization of a device such

3 | as the **CVSA** is explicitly authorized to be utilized by police investigators during the course of an

4 | interrogation of a criminal suspect.  Plaintiff's dissatisfaction with the results of the testing is not

5 | competent grounds upon which to assert a defective product such as to allow a products liability

6 | theory to be pursued.  This attempt to plead that by using the **CVSA** a duty of care to **CROWE**

7 | was breached flies in the face of the above-referred Penal Code section.

8 | **CONCLUSION**

9 |      For all the foregoing reasons, it is respectfully requested that this court grant the Motion

10 | to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12 (b)(6) due

11 | the overwhelming insufficiency of the claims set forth in the charging allegations of this complaint.

12 | Dated:  September 20, 1999             KOESTER AND WALKER

13 |

14 |

15 |                        HUGH G. RADIGAN

                       Attorney for Defendant

16 |                        NATIONAL INSTITUTE FOR TRUTH

                       INVESTIGATION

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

9

MINUTES OF THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

STEPHEN CROWE, et al.                                    99cv0241-R(RBB)
MICHAEL LEE TREADWAY, et al.                             99cv0253-J(JFS)
AARON HOUSER, et al. v. COUNTY OF SAN DIEGO     Case No. 99cv0283-B(BTM)


HON. RUBEN B. BROOKS      CT. DEPUTY VICKY LEE            Rptr.

Attorneys

            Plaintiffs                          Defendants

Milton J. Silverman, Jr. (present)    Deborah Lynn Peterson (present)
Bob Geile (present)                   Mark Waggoner (present)
Robert J. Francavilla (present)       Cindy McMahon (present)
Gayle Blatt (present)                 Diana Field (present)
Dennis Schoville                      Duane Bennett (present)
Randy Walton (present)

PROCEEDINGS:  __X__ In Chambers  _____ In Court  _____ Telephonic

A pre-answer early neutral evaluation was conducted in chambers in cases
99cv0241, 99cv0253, and 99cv0283.

At the conference, the Court ordered all discovery stayed until further
order.

Plaintiffs shall serve the complaint or any amended complaints on the
Defendants or their agents no later than March 22, 1999.

Any party may file for relief from the discovery stay by March 29, 1999.
Opposition to any motion from relief from stay is due on April 12, 1999.  Any
reply brief shall be filed no later than April 16, 1999.  Judge Brooks will
hear motions regarding relief from the discovery stay on April 26, 1999, at
10:30 a.m.

Plaintiffs shall file any motions for relief from the late claim requirements
no later than May 24, 1999.  Defendants will file any motions to dismiss or
for judgment on the pleadings by May 24, 1999.  Both motions shall be heard
before Judge Rhoades June 28, 1999.  Oppositions to any motions must be filed
by June 7, 1999.  Any reply briefs are due by June 14, 1999.

Copies to counsel of record.

DATE: March 10, 1999                    INITIALS: _VL(mg/cm)_ Deputy

cc:  Judge Rhoades

1

## PROOF OF SERVICE BY MAIL (1013a; 2015.5 C.C.P.)

2  STATE OF CALIFORNIA )
 ) ss
3  COUNTY OF LOS ANGELES )

4     I am a citizen of the United States and a resident of the county aforesaid.  I am over the
5  age of eighteen years and not a party to the within entitled action, my business address is 500 N.
 Brand Blvd. Suite 2200, Glendale, CA 91203.

6     On September 20, 1999 I served the within **MEMORANDUM OF POINTS AND
 AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT** on the parties in
7  said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully
 prepaid in the United States mail box at Glendale, California, addressed to the following:

8
                        **SEE ATTACHED SERVICE LIST**
9
     I am 'readily familiar' with the firm's practice of collection and processing correspondence
10  for mailing.  Under that practice, it would be deposited with the U.S. Postal service on that same
 day with postage thereon fully prepaid at Glendale, California in the ordinary course of business.
11  I am aware that on motion of the party served, service is presumed invalid if postal cancellation
 date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12
     I declare under penalty of perjury, that the foregoing is true and correct.
13
     Executed on September 20, 1999 at Glendale, California.
14

15                              _Deanna S. Davalos_
16                              Deanna S. Davalos

17

18

19

20

21

22

23

24

25

26

27

28

99cv0241E(RBB)

**SERVICE LIST**

Milton J. Silverman, Esq.
2402 Broadway
San Diego, CA  92102

Mark Waggoner, Esq.
Escondido City Attorney's Office
201 N. Broadway
Escondido, CA   92025

Ms. Deborah Peterson, Esq.
San Diego County Counsel
1600 Pacific Highway, Room 355
San Diego, CA  92101

Dennis A. Schoville, Esq.
Schoville & Arnell
600 West Broadway, Suite 2800
San Diego, CA  92101

Robert J. Francaville, Esq.
Gayle M. Blatt, Esq.
 Casey, Gerry, Reed & Schenk
110 Laurel Street
San Diego, CA  92101

Kenneth H. Moreno, Esq.
Murchison & Cumming
750 B Stree,t Suite 2550
San Diego, CA  92101

Diana L. Field, Esq.
Ferguson, Praet & Sherman
A Professional Corporation
1631 East 18th Street
Santa Ana, CA  92705-7101

11