Case 3:99-cv-00241-JM-RBB   Document 150   Filed 05/31/00   PageID.2660   Page 1 of 18

USDC SCAN INDEX SHEET










MEG   6/1/00    15:34
3:99-CV-00241   CROWE V. COUNTY OF SAN DIEGO
*150*
*P/A.*

FILED

00 MAY 31 PM 4:21

HUGH G. RADIGAN    SBN 94251
KOESTER AND WALKER
500 N. Brand Boulevard, Suite 2200
Glendale, California 91203
Telephone: (818) 545-3700
Facsimile: (818) 545-3702

Attorneys for Defendant,
NATIONAL INSTITUTE FOR TRUTH VERIFICATION

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CROWE; CHERYL CROWE; JUDITH ANN KENNEDY, MICHAEL CROWE and SHANNON CROWE, a minor through their guardian ad litem, STEPHEN CROWE<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ESCONDIDO; CITY OF OCEANSIDE; COUNTY OF SAN DIEGO; RALPH CLAYTOR; CHRIS McDONOUGH; GARY HOOVER; LAWRENCE BLUM; BARRY SWEENEY; JAMES LANAGAN; SERGEANT ANDERSON; RICK BASS; NATIONAL INSITITUTE FOR TRUTH VERIFICATION, a business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | CIVIL NO. 99-0241-R (RBB)<br><br>consolidated with:<br><br>CIVIL NO. 99-0283-R<br>CIVIL NO. 99-0253-R<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT<br><br>Date:   July 17, 2000<br>Time:   2:00 p.m.<br>Ctrm..:  5<br>Judge:  Hon. John S. Rhoades, Sr. |

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| INTRODUCTION AND STATEMENT OF FACTS | 1 |
| THE IMMUNITY SET FORTH IN CIVIL CODE SECTION 47(B) PRECLUDES PLAINTIFFS' CAUSES OF ACTION AGAINST NITV | 4 |
| CALIFORNIA PENAL CODE SECTION 637.3 TACITLY CONDONES THE USAGE OF THE CVSA HEREIN | 11 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**PAGE**
**FEDERAL CASES**

Morales v. Cooperative of American Physicians, Inc. 180 F.3d 1060 .............. 8, 9, 10

Silicon Knights, Inc. v. Crystal Dynamics, Inc. 983 F.Supp. 1303 (N.D. Cal.1997) ...... 5

**CALIFORNIA CASES**

Adams v. Superior Court 2 Cal.App.4th 521, 529 (Court of Appeal 1992) ............ 9

Bardin v. Lockheed Aeronautical SystemsCo. (1999) 82 Cal.Rptr.2d 726, 727 ......... 10

Block v. Sacramento Clinical Labs, Inc. (1982) 1131 Cal.App.3d 386, 389-390 ........ 8

Cedars Sinai Medical Center v. Superior Court (1988) 206 Cal.App.3d 414, 418 ....... 8

Cote v. Henderson (1990) 218 Cal.App.3d 796, 806 ................................. 6

Doctors Company Insurance Services v. Superior Court, 255 Cal.App.3d 1284, 1294
    (Court of Appeal 1990) .................................................... 9

Edwards v. Centax Real Estate Corp. (1997) 53 Cal.App.4th 15, 29 ................. 11

Fremont Compensation Insurance v. Superior Court (1996) 44 Cal.App.4th 867, 876-877 . 6

Hunsucker v. Sunny Vale Hilton (1994) 23 Cal.App.4th 1498, 1501-2 ................ 8

Imig v. Ferarr (1977) 70 Cal.App.3d 48, 55-56 .................................... 6

Kachig v. Booth (1971) 22 Cal.App.3d 626, 641 .................................... 7

O'Shea v. General Telephone Co. (1987) 193 Cal.App.3d 1040, 1048 ................ 10

Rubin v. Green, 4 Cal.4th 1187, 1193 (1993) ...................................... 9

Silberg v. Anderson (1990) 50 Cal.App.3d 205, 215-216 ........................ 8, 9, 11

Williams v. Taylor (1982) 129 Cal.App.3d 745, 753 ................................ 6

**STATUTES**

Federal Rule of Civil Procedure 12(b)(6) ........................................ 12

Civil Code § 47 ........................................................ 5, 7, 8, 9, 10

| | |
|---|---|
| 1 | HUGH G. RADIGAN     SBN 94251 |
| | KOESTER AND WALKER |
| 2 | 500 N. Brand Boulevard, Suite 2200 |
| | Glendale, California 91203 |
| 3 | Telephone:  (818) 545-3700 |
| | Facsimile:   (818) 545-3702 |
| 4 | |
| 5 | Attorneys for Defendant, |
| | NATIONAL INSTITUTE FOR TRUTH VERIFICATION |
| 6 | |

### UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CROWE; CHERYL CROWE; JUDITH ANN KENNEDY, MICHAEL CROWE and SHANNON CROWE, a minor through their guardian ad litem, STEPHEN CROWE | CIVIL NO. 99-0241-R (RBB) |
| | consolidated with: |
| | CIVIL NO. 99-0283-R |
| | CIVIL NO. 99-0253-R |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| CITY OF ESCONDIDO; CITY OF OCEANSIDE; COUNTY OF SAN DIEGO; RALPH CLAYTOR; CHRIS McDONOUGH; GARY HOOVER; LAWRENCE BLUM; BARRY SWEENEY; JAMES LANAGAN; SERGEANT ANDERSON; RICK BASS; NATIONAL INSITITUTE FOR TRUTH VERIFICATION, a business entity; and DOES 1 through 100, inclusive, | |
| | Date:    July 17, 2000 |
| | Time:    2:00 p.m. |
| | Ctrm..:   5 |
| | Judge:   Hon. John S. Rhoades, Sr. |
| Defendants. | |

### INTRODUCTION AND STATEMENT OF FACTS

Given the indulgence of four months to correct the glaringly factual shortcomings with these three original now consolidated complaints, plaintiffs have again presented within the amended pleading a document filled with so much hyperbole and drama it is more likely to be confused with a Hollywood script rather than a Federal pleading.  Nevertheless, the amended complaint is still woefully inadequate with respect to clarifying factually, what, if anything, defendant **NATIONAL INSTITUTE FOR TRUTH VERIFICATION'S** (hereinafter 'NITV") product did to contribute

-1-

to plaintiffs' predicament.

Originally within opposition to the first successful 12(b)(6) motion, plaintiffs describe defendant **NITV**'s product, the **CVSA**, as a "phony truth-detecting machine" whose results "are not reliably accurate." (See Treadway Opposition to Escondido 12(b)(6) motion at page 6/17, Treadway Opposition to Oceanside 12(b)(6) motion at pages 15/7 and16/22, and Houser Opposition to **NITV** 12(b)(6) motion at page 5/28 - 6/1). Now within the Amended Complaint the **CVSA** is described as an "alleged truth detecting machine" (paragraph 37), "a psuedo-scientific tool" (paragraph 40), a "worthless prop" (paragraph 114) and a "God box" (paragraph 125), whose utilization is deliberately intended by the manufacturer to "inflict psychological torture on the suspect while aiding in extracting illegal confessions" (paragraph 271). While acknowledging that alternative pleadings are permissible within unverified charging allegations, defendant contends that plaintiff's own creative recitation of facts negates any suggestion that the **CVSA** of and by itself, did anything to cause plaintiffs harm.

A close reading of these charging allegations overwhelmingly implicates the alleged wrongful use of the product and purposeful conduct of the interrogating officers and staff in causing plaintiffs harm. (See paragraphs 37, 40, 59, 78, 104, 106, 107, 109 and 120). Simply stated, it is not the **CVSA** itself that harms plaintiffs, but rather the alleged conscious and deliberate manuipulation of the results by the interrogation team who allegedly repeatedly lie, cajole and string along these three suspects as they individually see fit. It is not the **CVSA** product that improperly performs, but rather the operator, if plaintiff's charging allegations are accepted as true. For example at paragraph 101 defendant **CLAYTOR** is alleged to have administered a test to plaintiff **HOUSER** with the involvement of the **CVSA**. Plaintiffs go on to assert that defendant **CLAYTOR** lied to **HOUSER** that he had failed the test. Implicitly this suggests the test properly administered exonerated **HOUSER** rendering the product suitable for the intended use but for the nefarious intent of the interrogator.

Similarly, at paragraph 37 plaintiffs assert that defendant **McDONOUGH** lied to **CROWE** concerning the **CVSA**'s reliability and accuracy; at paragraph 76 the same interrogation teams lies to **HOUSER**'s parent as to what the **CVSA** will measure in order to secure consent; at paragraph 78,

-2-

defendant **CLAYTOR** lies to **HOUSER** telling him he failed the February 11 test; at paragraph 120 the **CVSA** produces incomprehensible results that assist the interrogator who then purposely tells the suspect that they are not telling the truth. At best plaintiffs have stated causes of action that sound in negligent misrepresentation attributable to the interrogation team and not the product.

Perhaps most telling is the charging allegation at paragraph 119. There plaintiffs assert the **CVSA** is deliberately manufactured to assist in extracting confessions by inflicting "psychological torture". How the inanimate **CVSA** takes life and becomes a psychological weapon of torture strains credulity. Unwittingly, plaintiffs have pled themselves out of a products liability theory and clearly implicated the alleged poor behavior and bad conduct of the interrogation team.

In a last ditch attempt to backstep out of their own cleverly planted minefield, plaintiffs assert that the **CVSA** was both unreliable and untrustworthy (paragraph 268), incapable of detecting truthfulness or lies (paragraph 119), and purposefully marketed to inflict psychological torture and coerce illegal confessions (paragraph 271). If that be the case and the rest of plaintiffs' charging allegations are presumed true, the product apparently performed admirably and well within its intended purpose. The **CVSA**, a "worthless device", incapable of detecting truthfulness no better than random chance (paragraph 275) performed well within its intended purpose, producing incomprehensible results exactly as intended. Unfortunately, if anyone here has a cause of action against defendant **NITV**, it would apparently be the police defrauded by the shrewd marketing of the defendant, but only if they honestly believe the product had value in detecting truthfulness, and certainly not plaintiffs herein.

It serves no useful purpose for plaintiffs to deliberately misapprehend the purpose and usefulness of a product, ruthlessly disparage it and then fancifully portray themselves as part of a class of citizenry harmed by its presence in the stream of commerce. As a "worthless prop" it well achieved it intended purpose. A significant portion of **TREADWAY**'s confession remains admissible.

It does not suffice to assert that a product, when properly utilized by trained operators, results in a finding contrary to plaintiff's best interest, that it is defective, inaccurate or inherently flawed. Pursuant to <u>California Penal Code</u> Section 637.3 plaintiffs implicitly consented to the testing

-3-

performed by trained operators. Results of the test interpreted by trained operators, failed to exonerate plaintiffs. Such charging allegations as set forth in the amended complaint are wholly insufficient as a matter of law upon which to base a theory of product liability or negligence. What is even more troubling with respect to plaintiff's theory of recovery is the fact that since it sounds in product liability and impugns conduct performed within the context of a criminal investigation, it necessarily is a most disfavored theory and remedy in light of the immunities and protections afforded to a defendant by virtue of California Civil Code Section 47(b).

### THE IMMUNITY SET FORTH IN CIVIL CODE SECTION 47(b) PRECLUDES PLAINTIFFS' CAUSES OF ACTION AGAINST NITV.

Plaintiff's complaint asserts two causes of action against **NITV**, one sounding in negligence with respect to the design, manufacture and marketing of its product, and the other sounding in strict liability for the products failure to properly perform. Neither theory has any vitality as to the product involved.

**CVSA** was introduced in the 1980's by **NITV** as an investigative tool to facilitate truth finding within law enforcement operations. Its effectiveness requires that **NITV** restricts its sale to law enforcement agencies. **CVSA** accurately identifies deception or validates statements quickly and effectively.

The **CVSA** detects, measures, quantifies and displays micro-tremors. These tremors are tiny frequency modulations in the human voice. When a test subject is not being truthful, the automatic, or involuntary nervous system, causes an inaudible increase in the micro-tremors frequency.

A state of the art computer processes these voice frequencies and graphically displays the fluctuation of the voice patterns simultaneously with the subject's answers with up to 15 patterns on the computer screen at one time, numerically scoring each pattern and checking for deception. As such, the **CVSA** is not restricted to Yes and No answers and is able to analyze accurately tape recordings of unstructured conversations.

As the subject speaks, the computer displays each voice pattern, numbers it and displays its numerical value on the computer screen. At the end of the examination, the computer renders an evaluation utilizing a patented algorithm system to render a finding of either deception indicated or

-4-

no deception indicated on each response to each question. Based upon these findings, a trained examiner may either decide to eliminate the subject as a suspect or begin a formal interrogation. Unlike a polygraph, the **CVSA** does not require that the subject being tested have any wires attached to him. Unlike the polygraph, drugs do not affect the results of the exam and there are no known counter measures that will cause "inconclusive" results.

It is graphically apparent that the **CVSA** is an adjunct to a competent and thorough police investigation. In the case at bar there are no allegations that the devices utilization was the sole or compelling determinative factor utilized by the investigating officers in reaching their decision to detain, interrogate, arrest and ultimately charge plaintiff. To suggest otherwise is to ignore the surplusage of physical and circumstantial evidence, incriminating statements and admissions secured by law enforcement within the totality of their investigation.

As such, the utilization of the **CVSA** is analogous to an eye witness to a crime who comes forward and testifies as to their perceptions. It is not an imprimatur of guilt or innocence, nor does it presume to replace the role of the ultimate fact finder at trial. It is simply a tool to aid in truth determination. As a product, it performed as intended. Implicitly, either consent from plaintiffs' guardians was granted or plaintiffs themselves consented to the questions that were directed to them and the answers they gave were properly analyzed by trained operators. How the use of the device violated the law or resulted in damages to the plaintiffs is left totally to surmise. As such the complaint is vulnerable to a Motion to Dismiss. See <u>Silicon Knights, Inc. v. Crystal Dynamics, Inc.</u>, 983 F.Supp 1303 (ND.Cal.1997).

Not surprisingly, eye witnesses who testify at trial are immune from civil liability. This privilege is codified at <u>California Civil Code</u> Section 47 which provides in pertinent part:

"A privileged publication or broadcast is one made:

    (a) in the proper discharge of an official duty.

    (b) In any

        (1) legislative proceeding,

        (2) judicial proceeding,

        (3) in any other official proceeding authorized by law, . . . ."

-5-

As interpreted in a number of cases, Section 47 of the Civil Code protects persons who report potential criminal activity to the police or local prosecutor from law suits even if the report is made with malice. See <u>Cote v. Henderson</u> (1990) 218 Cal.App.3d 796, 806, [ Defendant was "absolutely privileged" to report rape to the police and District Attorney]; See <u>Williams v. Taylor</u> (1982) 129 Cal.App.3d 745, 753, [Owner of auto shop "absolutely privileged" to tell police department of former manager's wrong doing].

In interpreting the rationale for the privilege the court in <u>Fremont Compensation Insurance vs. Superior Court</u> (1996) 44 Cal.App.4th 867, 876-877 stated:

> "The absolute privilege in Civil Code Section 47 represents a value judgment that facilitating the 'utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing' is more important than the 'occasional harm that might befall a defamed individual'." See <u>Imig v. Ferarr</u> (1977) 70 Cal.App.3d 48, 55-56.

In interpreting this absolute privilege, the court in <u>Williams v. Taylor</u> (1982) 129 Cal.App.3d 745, 753-754 noted that:

> "Section 47 provides for an absolute privilege with regard to statements made " in any . . . . official proceeding authorized by law." In our view, a communication concerning possible wrongdoing made to an official government agency such as a local police department and which communication is designed to prompt action by that entity, is as much a part of an official proceeding as a communication made after an official investigation has commenced." (Citations omitted) After all, "the policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing." (Citations omitted) In order for such investigation to be effective, "there must be an open channel of communication by which citizens call his attention to suspected wrongdoing. That channel will quickly close if its use subjected the user to risk of liability for libel. Qualified

privilege is inadequate under the circumstances . . . The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. Thus the absolute privilege is essential."

Perhaps an even more explicit rationale for this rule is contained within the court's finding in Kachig v. Booth (1971) 22 Cal.App.3d 626, 641 wherein the court noted:

"Underlying the recognition of this privilege is the important public policy of affording the utmost freedom of access to the courts. (Citations omitted). The privilege is accorded not only to parties, but to witnesses, even where their testimony is allegedly perjured and malicious. (Citations omitted) The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say."

Pursuant to this well-reasoned authority, the implementation of the CVSA as described within the charging allegations of this amended complaint should necessarily enjoy the same absolute privilege and immunity. To hold otherwise would inhibit the intended unfettered dissemination of information to appropriate authorities when criminal wrongdoing is suspected. Again, there are no specific charging allegations within the complaint that describe with any specificity what it is that was asked of the plaintiffs or how they responded such that ultimate determinations of guilt or innocence were rendered. What the court is currently confronted with by these same charging allegations is simply plaintiff's disgruntlement with the fact they were not exonerated after the test was administered to them. Defendant is left totally in the dark as to what facet of the implementation or utilization of their device has in any way further incriminated or led the trained operators to conclude that plaintiffs were lacking veracity. As such, plaintiff cannot establish any causal relationship between this particular device's utilization and its results and their asserted damages.

The application of the privilege set forth in Civil Code Section 47 precludes plaintiff from any tort recovery other than that sounding in malicious prosecution. See Block v. Sacramento

-7-

Clinical Labs, Inc. (1982) 1131 Cal.App.3d 386, 389-390 for an excellent discussion of the application and expansion of this privilege to all variety of tort remedies. In accord, see Hunsucker v. Sunny Vale Hilton (1994) 23 Cal.App.4th 1498, 1501-2, wherein the protections afforded by Civil Code Section 47 were extended to a hotel manager who had reported to the police the fact that a guest was seen brandishing a weapon in his room. The guest was arrested and briefly detained after a positive warrant check came up on their computer. After establishing his correct identity and proving to the police that the gun involved was a toy, the guest was released.

Likewise in Cedars Sinai Medical Center v. Superior Court (1988) 206 Cal.App.3d 414, 418, the protections of Civil Code Section 47 extended to private citizen employees of a hospital who were asked by police to confirm if a voice on a taped bomb threat was that of a co-worker suspected of arson. In granting a writ after the lower court denied the employee's summary judgment motion, the court concluded:

> "Public policy requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice which is likely to arise from the termination of the prosecution in favor of the accused.".

The California statutory scheme envisions that the sole remedy available to someone charged with criminal wrongdoing is a malicious prosecution action which only ripens after the accused successfully defends on the merits the underlying criminal charge. See Silberg v. Anderson (1990) 50 Cal.3d 205, 215-216 wherein the California Supreme Court made it clear that the privilege of Section 47 applies to all tort actions except malicious prosecution, that are based upon communications of the proper type.

There being no favorable determination of the underlying criminal charges as to these plaintiffs on the merits that would exonerate them and indicate their innocence, such a cause of action for malicious prosecution is necessarily premature.

Contrary to Plaintiff's contention, the immunity provided in Civil Code § 47(b) is equally available to NITV. See Morales v. Cooperative of American Physicians, Inc. 180 F.3d 1060, wherein the court revisited the litigation privilege embraced by Civil Code § 47(b).

-8-

> "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as Section 47(b). <u>Rubin v. Green</u>, 4 Cal. 4th 1187, 1193 (1993). The California Supreme Court had held that:
>> 'The privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.'
>> <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212 (1990)."

Obviously, the use of the CVSA by a trained operator generates results in the form of tangible data for the trained operator to evaluate. The generated tangible data constitutes a communication from the equipment to the trained operator. The criminal investigation of a murder is obviously a judicial proceeding. Penal Code § 637.3 tacitly approves and condones the use of the CVSA equipment within a criminal investigation. The tangible data produced by the CVSA equipment is intended to be interpreted by the trained operator, so as to facilitate truth-finding within the investigatory phase of this judicial proceeding. Most assuredly, trained operators would not utilize this equipment within their interrogation process but for its value relating to truth-finding. As such, the use of the CVSA has more than some connection to the investigation.

The court in <u>Morales</u>, <u>supra</u>, concluded:

> "California courts have given the privilege an expansive reach, <u>see</u> <u>Rubin</u>, 4 Cal.4th at 1193-94, and held that the privilege is absolute, even if the result is inequitable, <u>see</u> <u>Doctors Company Insurance Services v. Superior Court</u>, 225 Cal.App.3d 1284, 1294 (Court of Appeal 1990). Moreover, any doubt as to whether the privilege applies is resolved in favor of applying it. <u>See</u> <u>Adams v. Superior Court</u>, 2 Cal.App.4th 521, 529 (Court of Appeal 1992)."

Plaintiff's contention that the privilege has never been applied to an inanimate manufactured product is most disingenuous. Based upon the ample authority within the moving papers descriptive of how the courts have historically applied the privilege to embrace every conceivable tort, while

-9-

leaving for the aggrieved party a malicious prosecution cause of action, and coupled with the Morales expansive application of the privilege, it is readily apparent that the privilege is equally applicable herein. If anything, the lack of decisional authority applying the privilege to a product liability case suggests not that the privilege does not apply, but rather suggests that the remedy sought herein is extremely tenuous, peculiar, and not well-founded. In conclusion, it does not suffice to bring a frivolous cause of action under a bizarre theory, and then argue the propriety of that conduct, since there exist no reported decisions repudiating that conduct per se.

The same rationale and logic expressed in Morales, supra, is to be found in Bardin v. Lockheed Aeronautical Systems Co. (1999) 82 Cal.Rptr.2d 726, 727, wherein the court of appeal recently held that Section 47(b) immunized a former employer from liability arising from statements made to a police department that was conducting a background check of a potential employee. See also O'Shea v. General Telephone Co. (1987) 193 Cal.App.3d 1040, 1048, wherein the court of appeal observed that the established rule in California was to accord even unsolicited communications to governmental agencies the absolute privilege of Civil Code § 47(b)(2):

> "The rationale of those cases is obvious in the case before us; it is to encourage the utmost freedom of communication between citizens and public authorities. The legislature has wisely required a thorough background investigation of the character of those who wish to be peace officers. It is essential that former employers of those considered for peace officer positions feel free to discuss in detail the characteristics of their former employees, now being considered for the extremely demanding tasks undertaken by the peace officers of this state."

By analogy, the sanctioned utilization of the CVSA equipment by trained operatives within this murder investigation with the consent of the suspects is equally essential to a competent and thorough interrogation. The free flow of the interrogation process conducted by trained law enforcement is exactly the type of communication meant to be protected by the privilege.

It is respectfully submitted that the better solution herein is to abide by the well-reasoned decisional authority of Silberg v. Anderson (1990) 50 Cal.3d 205, 213:

-10-

> "The purpose of the privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."
>
> "In other words, the litigation privilege is intended to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the fear that they may subsequently be sued in a derivative court action arising out of something said or done in the context of the litigation."

Edwards v. Centax Real Estate Corp. (1997) 53 Cal.App.4th 15, 29.

## CALIFORNIA PENAL CODE SECTION 637.3 TACITLY CONDONES THE USAGE OF THE CVSA HEREIN.

California Penal Code Section 637.3 provides in pertinent part:

> "(a) No person or entity in this State shall use any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation.
>
> (b) This section shall not apply to any peace officer, as defined in Section 830, while he is carrying out his official duties. . . ."

In the case at bar, Officer McDonough, a certified operator of the equipment and acting within the course and scope of his employment as a police officer for the City of Oceanside, is to be presumed to have properly secured plaintiff's consent or that of their guardians to utilize the device as part of the interrogation process.

As is clearly evident from the above-referred code section, the utilization of a device such as the CVSA is explicitly authorized to be utilized by police investigators during the course of an interrogation of a criminal suspect. Plaintiff's dissatisfaction with the results of the testing is not competent grounds upon which to assert a defective product such as to allow a products liability theory to be pursued. This attempt to plead that by using the CVSA a duty of care to plaintiffs was

-11-

breached flies in the face of the above-referred Penal Code section.

## CONCLUSION

It should be noted that plaintiffs were granted extraordinary relief from the discovery stay and allowed to depose among others, defendant Blum. According to the charging allegations, defendant BLUM played an integral part in coercing, manipulating and conspiring with the interrogation team while strategizing how best to break these plaintiff suspects. As such, his testimony would no doubt have been extremely helpful to plaintiffs in setting forth the factual sufficiency of their grievances. However, plaintiffs opted not to take advantage of this opportunity leaving defendant NITV continuing to guess what actually occurred during the interrogation process with any specificity. Plaintiffs' cavalier indifference to this opportunity belies the importance of these creative and derivative theories of recovery as to defendant **NITV.**

For all the foregoing reasons, it is respectfully requested that this court grant the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) due to the overwhelmingly insufficiency of the claim set forth in the charging allegations of this complaint.

Again, defendant asserts that the more prudent course of conduct within this litigation would be to allow the criminal case to run its course. If after withstanding the charges on the merits plaintiffs continue to desire to litigate their perceived grievances, malicious prosecution is their sole remedy, not some fanciful derivative theory of product liability.

Dated: May 31, 2000

Respectfully submitted,

KOESTER AND WALKER

By /s/ Hugh G. Radigan
HUGH G. RADIGAN
Attorneys for Defendant
NATIONAL INSTITUTE FOR TRUTH
VERIFICATION

-12-

**PROOF OF SERVICE BY MAIL (1013a; 2015.5 C.C.P.)**

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am a citizen of the United States and a resident of the county aforesaid. I am over the age of eighteen years and not a party to the within entitled action, my business address is 500 N. Brand Blvd. Suite 2200, Glendale, CA 91203.

On May 31, 2000 I served the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** on the parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail box at Glendale, California, addressed to the following:

**SEE ATTACHED SERVICE LIST**

I am 'readily familiar' with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal service on that same day with postage thereon fully prepaid at Glendale, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury, that the foregoing is true and correct.

Executed on May 31, 2000 at Glendale, California.

_____
Deanna S. Davalos

## SERVICE LIST

| | |
|---|---|
| Milton J. Silverman, Esq.<br>**Law Office of Milton J. Silverman**<br>2402 Broadway<br>San Diego, CA 92102 | Attorneys for Plaintiffs **Stephen Crowe, Cheryl Crowe, Judith Ann Kennedy, Michael Crowe, and Shannon Crowe** |
| Mark A. Waggoner, Esq.<br>**Escondido City Attorney's Office**<br>201 N. Broadway<br>Escondido, CA 92025 | Attorneys for **City of Escondido, Mark Wrisley, Barry, Sweeney, Ralph Claytor, Cirilo, Tulimero, James, Lanagan, Naranjo, Rick Bass and Steve Sloan** |
| Richard J. Schneider, Esq.<br>**Daley & Heft**<br>462 Stevens Ave., Ste. 201<br>Solana Beach, CA 92075 | Attorneys for **City of Escondido, Mark Wrisley, Barry, Sweeney, Ralph Claytor, Cirilo, Tulimero, James, Lanagan, Naranjo, Rick Bass and Steve Sloan** |
| John J. Sansone, County Counsel<br>Diane Bardsley, Chief Deputy<br>**County of San Diego**<br>1600 Pacific Highway, Room 355<br>San Diego, CA 92101 | Attorneys for Defendant **Gary Hoover** |
| Dennis A. Schoville, Esq.<br>Louis J. Arnell, Esq.<br>**Schoville & Arnell**<br>1230 Columbia St., Ste. 800<br>San Diego, CA 92101 | Attorneys for Plaintiffs **Aaron Houser, Margaret Susan Houser and Gregg Houser** |
| Robert J. Francaville, Esq.<br>Gayle M. Blatt, Esq.<br>**Casey, Gerry, Reed & Schenk**<br>110 Laurel Street<br>San Diego, CA 92101 | Attorneys for Plaintiffs **Michael Lee Treadway, Tammy Treadway and Joshua David Treadway** |
| Kenneth H. Moreno, Esq.<br>**Murchison & Cumming**<br>750 B Stree,t Suite 2550<br>San Diego, CA 92101 | Attorneys for Defendant<br>**Lawrence Blum** |
| Diana L. Field, Esq.<br>**Ferguson, Praet & Sherman**<br>A Professional Corporation<br>1631 East 18th Street<br>Santa Ana, CA 92705-7101 | Attorneys for **Defendants City of Oceanside & Chris McDonough** |

-14-